**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2082-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J.S.-A.,

    Defendant-Appellant.

_____

Submitted April 25, 2017 — Decided May 3, 2017

Before Judges Fasciale and Gilson.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment No.
14-02-0303.

Joseph E. Krakora, Public Defender, attorney
for appellant (Stefan Van Jura, Deputy Public
Defender II, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for respondent (Kathleen
S. Bycsek, Assistant Prosecutor, of counsel
and on the brief).

PER CURIAM

    Defendant appeals from his conviction for second-degree

sexual assault, N.J.S.A. 2C:14-2(b). Defendant contends primarily

that the court erred by denying his <u>Miranda</u>[1] motion. We disagree and affirm.

The police investigated defendant for allegedly sexually assaulting his girlfriend's twelve-year-old daughter. The judge conducted a two-day <u>Miranda</u> hearing and heard testimony from Detective Daniel Kowsaluk, Detective Gabriel Carrasquillo, and defendant. The parties dispute what the detectives and defendant may have stated in the police station before defendant entered into the interrogation room, and whether the police coerced defendant into giving his statement by that purported communication. We discern the pertinent facts from the transcript of the <u>Miranda</u> hearing.

Detective Kowsaluk testified that he met with defendant outside the interrogation room at the police station and asked him in English if he would give a statement. He testified that defendant said yes, but told him he felt more comfortable speaking in Spanish. Detective Kowsaluk then called Detective Carrasquillo for that purpose because he spoke Spanish. Detective Carrasquillo testified that he did not communicate with defendant outside the interview room.

---

[1] <u>Miranda v. Arizona</u>, 384 <u>U.S.</u> 436, 86 <u>S. Ct.</u> 1602, 16 <u>L. Ed.</u> 2d 694 (1966).

A-2082-15T4

Defendant testified that Detective Kowsaluk, in English, told him outside the interview room that all people make mistakes and defendant had to speak with him. Defendant further stated that before entering the interrogation room, Detective Carrasquillo handed him a white card, which contained his Miranda rights. According to defendant, Detective Carrasquillo told him that they were not going to call the immigration authorities, but if defendant talked to them, the judge and the prosecutor would "be very happy with [him] and everything [would] be over." Defendant explained that he decided to speak with the police because one of the detectives looked upset.

Detective Carrasquillo and defendant then entered the interrogation room and the detective began the interview. The police recorded defendant's entire statement. After the alleged conversations outside the interrogation room, and while being fully video recorded in the room immediately before defendant gave his statement, the detective read defendant his Miranda rights.

On his motion to suppress, defendant argued that before he entered into the interrogation room the police coerced him to give his statement about the incident. The judge found, however, that the police did not so coerce defendant. He stated:

> Defendant argues that prior to the interview and outside of the presence of the camera, he was pressured to speak with the detectives.

> This argument was . . . raised . . . for the first time at the [Miranda] hearing. The audio and video recording of [d]efendant's statement do not substantiate this claim. Defendant's demeanor and response to Detective Carrasquillo's questions do not evidence signs of pressure. In fact, there is nothing in this record to support the claim that [d]efendant was coerced prior to, during, or after the interview.

The judge determined that defendant knowingly and intelligently waived his Miranda rights, denied the motion, and entered the order under review.

Defendant then pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(b). The court followed the plea agreement and sentenced defendant to a three-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and Megan's Law, N.J.S.A. 2C:7-1 to -23.

On appeal, defendant argues the following point:

> THIS MATTER MUST BE REMANDED TO THE LAW DIVISION FOR CREDIBILITY DETERMINATIONS, WHICH ARE MISSING FROM THE OPINION, AND WHICH ARE NECESSARY FOR RESOLUTION OF THE LEGAL ISSUES BECAUSE THE TESTIMONY OF DEFENDANT AND POLICE WITNESSES DIVERGED ON MATERIAL ISSUES OF FACT.

We uphold the factual findings underlying the trial court's disposition on a motion to suppress "so long as those findings are supported by sufficient credible evidence in the record." State v. Robinson, 200 N.J. 1, 15 (2009) (quoting State v. Elders, 192

N.J. 224, 243 (2007)). Thus, appellate courts should reverse only when the trial court's determination is "so clearly mistaken that the interests of justice demand intervention and correction." State v. Lamb, 218 N.J. 300, 313 (2014) (quoting Elders, supra, 192 N.J. at 244). We give deference to a trial court's factual findings when "the trial court [] had the opportunity to evaluate the credibility of the witnesses who appeared and testified." State v. Diaz-Bridges, 208 N.J. 544, 565 (2011). Legal determinations flowing from those findings, however, are subject to de novo review. State v. Coles, 218 N.J. 322, 342 (2014).

Here, the judge heard testimony from the detectives and defendant as part of a two-day Miranda hearing. The judge also watched how each witness testified at the hearing, and viewed the recording of defendant's statement in the interrogation room. The judge found that defendant was not coerced "prior to, during, or after the interview." He explained that defendant's demeanor during the interview did not suggest that defendant was pressured.

The judge further found that defendant's responses to the detective's questions did not demonstrate that the detectives coerced defendant outside the interrogation room prior to the interview. Although the judge did not expressly make a credibility finding, he implicitly found Detective Carrasquillo credible. See State v. Locurto, 157 N.J. 463, 474 (1999) (holding that

credibility determinations could be inferred from the account of facts and witness testimony presented in a Municipal Court's decision). We have no reason to disturb the judge's findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION